UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:16-CV-00086-HBB

**LYDIA A. BRAGG**                                                                                                             **PLAINTIFF**

**VS.**

**CAROLYN W. COLVIN, Acting**
**Commissioner of Social Security**                                                                              **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Lydia A. Bragg ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Plaintiff has moved the Court for a remand to consider new medical evidence (DN 11), Defendant has filed a response (DN 18), and Plaintiff has filed a reply (DN 20).

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 9). By Order entered August 4, 2016 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

1

FINDINGS OF FACT

On November 29, 2012, Plaintiff filed an application for Disability Insurance Benefits (Tr. 17, 205). On October 24, 2013, Plaintiff filed an application for Supplemental Security Income (Tr. 17, 211). Plaintiff alleged that she became disabled on February 28, 2010, as a result of severe neck and shoulder pain, fused vertebrae in the lumbar spine, impaired reflexes, decreased sensation/feelings in the right leg, and bulging/possible degenerative discs (Tr. 205, 211, 223). Prior to the administrative hearing Plaintiff amended her alleged onset date to August 31, 2012 (Tr. 41, 313). On September 11, 2014, Administrative Law Judge Mary Joan McNamara ("ALJ") conducted a video hearing from Baltimore, Maryland (Tr. 17, 39-40). Plaintiff and her counsel, Mary G. Burchett-Bower participated from Bowling Green, Kentucky (Id.). Additionally, Peter A. Manzi, an impartial vocational expert participated and testified from Rochester, New York (Id.).

In a decision dated November 24, 2014, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-32). At the first step, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 31, 2012, the alleged onset date (Tr. 19). At the second step, the ALJ determined that Plaintiff's spine disorders/degenerative disc disease/osteoarthritis are "severe" impairments within the meaning of the regulations (Id.). Notably, at the second step, the ALJ also determined that Plaintiff's migraine headaches, anxiety, and depression/affective disorder are "non-severe" impairments within the meaning of the regulations (Tr. 19-23). At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 23).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity to perform less than a full range of light work because she can never climb ladders, ropes, or scaffolds; can occasionally stoop; can frequently kneel, crouch, and crawl; and can unlimitedly climb stairs, climb ramps, and balance (Tr. 23). Relying on testimony from the vocational expert, the ALJ found that Plaintiff is unable to perform any of her past relevant work (Tr. 30).

The ALJ proceeded to the fifth step where she considered Plaintiff's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 30-32). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Tr. 32). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from August 31, 2012, through the date of the decision, November 24, 2014 (Id.).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 11-13). The Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion,

even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-5). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); see 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step. Specifically, the ALJ concluded that the Plaintiff possessed the requisite residual functional capacity to perform certain jobs existing in substantial numbers in the national and local economy (Tr. 30-32).

Plaintiff's Motion for Remand

1

Plaintiff moves for a remand, pursuant to sentence six of 42 U.S.C. § 405(g), to consider new medical evidence regarding her lower back condition that was not before the ALJ (DN 11-3 PageID # 482). Plaintiff understands to obtain a sentence six remand she must demonstrate the evidence is new, material, and that good cause exists for her failure to introduce the evidence at the administrative level (DN 11-3 PageID # 482-83).

The evidence at issue is treatment records, dated January 21 and February 5, 2015, from Mitchell J. Campbell, M.D., with the Leatherman Spine Center in Louisville, Kentucky (DN 11-1 PageID # 454-469), and imaging-radiological reports from Norton Hospital, dated February 5, 2015, that set forth the results of a lumbar myelogram and helical CT images of the lumbar spine after administration of intrathecal contrast (DN 11-2 PageID # 470-481). Plaintiff explains that the evidence is new because it was not before the ALJ at the time of the decision (Id. PageID # 483).

Plaintiff contends that the evidence is material because the radiological imaging shows a pars defect at L5 with loosening of instrumentation from a prior fusion, nonunion/pseudoarthrosis at L5-S1 and possibly at L5 F4 region, and malpositioned screws on the left side at L4 and L5 (Id.). Plaintiff also points out that Dr. Campbell's treatment notes indicate the instrumentation is clearly loose, and Plaintiff has a nonunion especially at the L5-S1 region (Id.). Plaintiff asserts that the abnormalities depicted in the new medical records are inconsistent with the ALJ's finding that Plaintiff has the residual functional capacity to perform a limited range of light work (Id.). Plaintiff points out that at age 50 a sedentary residual functional capacity would direct a finding of

disability in this case based on Medical-Vocational Rule 201.14 (Id.). Plaintiff argues that given the short period of time between the ALJ's decision and the imaging at Norton's Hospital and in light of the documentation of loose instrumentation and nonunion, it is unlikely that the changes occurred after the ALJ's decision (Id.).

Plaintiff asserts that good cause exists for her failure to present the evidence prior to when the ALJ rendered the decision (Id.). Plaintiff explains that in September 2013, she sought treatment with Paul McCombs, M.D., at the Howell Allen Clinic in Nashville, Tennessee (Id. citing Tr. 382-86). However, at that time she did not have medical insurance (Id.). Plaintiff explains that the medical insurance she received through the Affordable Care Act in 2014, would not cover out of state treatment (DN 11-3 PageID # 483 citing Tr. 54-55). According to Plaintiff, it took her time to find a specialist in Kentucky who was covered by her medical insurance and would see her despite having undergone back fusion surgery with another physician (DN 11-3 PageID # 484 citing Tr. 79). Moreover, Plaintiff asserts that good cause is generally shown "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability" (Id. quoting Koulizos v. Secretary, No. 85-1654, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) (unpublished opinion)).

Defendant concedes that the evidence is new (DN 18 PageID # 634-36). Defendant contends that the evidence is not material because Plaintiff has failed to demonstrate there is a "reasonable probability" that the ALJ would have reached a different conclusion on the issue of disability if she had been presented with this additional evidence (Id.). In support of this position, Defendant points out that a diagnosis alone does not indicate the level of severity of a condition in a particular individual (Id. citing Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988)). Defendant

argues that the ALJ thoughtfully considered Plaintiff's impairments and found that the overall record evidence did not support more functional limitations that what is set forth in the residual functional capacity assessment (DN 18 PageID # 634-36).

Defendant asserts that Plaintiff has failed to show good cause for not obtaining this evidence prior to the issuance of the ALJ's decision (Id.). In support of this position, Defendant points out that Plaintiff testified that during a time when she did not have medical insurance, she obtained treatment and prescriptions by paying out of pocket (Id. citing Tr. 66-67, 69-70). Further, Defendant claims that Plaintiff testified when she could not find a doctor in Bowling Green to treat her or take her medical insurance, she did not look for or call other doctors (DN 18 PageID # 634 citing Tr. 78-80). Additionally, Defendant asserts despite having the opportunity to do so, Plaintiff did not ask the ALJ to keep the record open so that additional evidence could be submitted (DN 18 PageID # 634).

In her reply, Plaintiff argues the evidence from Dr. Campbell and Norton Hospital is material because it shows that the condition of Plaintiff's lumbar spine was far more severe than the evidence in the record that the ALJ relied upon (DN 20 PageID # 657). Plaintiff points out that the ALJ made her residual functional capacity determination without the benefit of evidence showing instrumentation instability and non-union (Id. PageID # 657-58). Further, Plaintiff asserts the new evidence supports the limitations expressed by the consultative examiner, J. Roy Watson, M.D., that limited Plaintiff to sedentary work (Id.). Again, Plaintiff points out that she turned 50 in 2013, and that age with a sedentary residual functional capacity would direct a finding of disability in this case based on Rule 201.14

With regard to Defendant's good cause argument, Plaintiff asserts that it is unreasonable to expect someone with her limited financial means to continue treatment in Tennessee when her insurance would not cover out of state treatment (Id. PageID # 659 citing Tr. 54-55, 79, 211-17). Plaintiff contends it is more reasonable to conclude that it took her time to find a specialist in Kentucky who would agree to evaluate her post-surgical lumbar back condition and obtain a referral to that physician (DN 20 PageID # 659 citing Tr. 79, 529). Again, Plaintiff reminds the Court that good cause is generally found "if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability" (DN 20 PageID # 659 citing Koulizos, 1986 WL 17488, at *2.

2

"A district court's authority to remand a case ... is found in 42 U.S.C. § 405(g) ..." Hollon ex rel. Hollon v. Comm'r of Soc. Sec., 447 F.3d 477, 482-83 (6th Cir. 2006). The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence six-remand)." Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)).

When a party moves for a pre-judgment remand, pursuant to sentence six of 42 U.S.C. §405(g), the Court does not address the correctness of the administrative decision. Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991). "Rather, the court remands because new evidence has

9

come to light that was not available to the claimant at the time of the administrative proceeding and the new evidence might have changed the outcome of the prior proceeding." Melkonyan, 501 U.S. at 98.

The party seeking the pre-judgment remand has the burden of demonstrating that the new evidence is material and that good cause exists for not previously presenting it to the Commissioner. Faucher, 17 F.3d 174-175. Evidence is "new" if it did not exist at the time of the administrative proceeding. Ferguson v. Comm'r of Soc. Sec., 628 F.3d 269, 276 (6th Cir. 2010); Sizemore v. Sec'y of Health & Human Servs., 865 F.2d 709, 711 (6th Cir. 1988) (*per curiam*). Evidence is material if there is a "reasonable probability" that a different disposition would have resulted if the evidence had been submitted during the original proceeding. Ferguson, 628 F.3d at 276; Sizemore, 865 F.2d at 711. Notably, evidence is not considered material if it merely depicts an aggravation or deterioration in a claimant's existing condition. Id. at 712. "Good cause" is demonstrated by showing a reasonable justification for the failure to acquire and present the evidence to the Administrative Law Judge. Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001).

Here, the evidence at issue is treatment records, dated January 21 and February 5, 2015, from Mitchell J. Campbell, M.D., with the Leatherman Spine Center in Louisville, Kentucky (DN 11-1 PageID # 454-469), and imaging-radiological reports from Norton Hospital ,dated February 5, 2015 (DN 11-2 PageID # 470-481). The reports address a lumbar myelogram and helical CT images of the lumbar spine after administration of intrathecal contrast (Id.).

Dr. Campbell's treatment note dated January 21, 2015, indicates that Plaintiff recently obtained insurance coverage and was seeking an evaluation of her low back pain and right leg pain

(DN 11-1 PageID # 457). Plaintiff reported that she underwent a decompression fusion at L4-S1 in 2005 and initially she did "pretty good" but "over the past few years" experienced an increase in back pain to the point where she has become fairly incapacitated (Id.). The treatment note indicates that Dr. Campbell performed an examination and reviewed a CT myelogram from 2013 (Id. PageID # 459). Notably, Dr. Campbell is referring to a CT myelogram performed on September 11, 2013, that was a part of the administrative record before the ALJ (Tr. 382).

Dr. Campbell indicated that the CT myelogram from 2013 revealed problems with the instrumentation from the 2005 surgery, a nonunion, and a pars defect at L5 (DN 11-1 PageID # 459). Dr. Campbell's assessment was pseudoarthrosis of the lumbar spine with loosening of instrumentation and spondylolisthesis (Id.). Dr. Campbell ordered a new CT myelogram and scheduled a follow-up office visit to discuss the results with Plaintiff (Id. PageID # 454-55, 459).

On February 5, 2015, Plaintiff underwent a lumbar myelogram and helical CT images of the lumbar spine after administration of intrathecal contrast (DN 11-2 PageID # 470-481). The radiologist's impression was as follows:

1. Posterior fusion of L-4-S1 with no evidence of osseous fusion.

2. Grade 1 anterolisthesis at L5-S1 with moderate bilateral foraminal stenosis and impingement of the L5 nerve roots.

3. Minimal degenerative spondylosis above the fusion.

(Id. PageID # 472, 487). Notably, the radiologist included the following addendum to his report:

> After discussion with Dr. Mitch Campbell the left L4 and L5 screws extend into the left psoas muscle. No obvious retroperitoneal

>hematoma is demonstrated.  Also, there is loosening of the S1 screws.  No bony fusion is noted the L4-L5 or L5-S1 posterior elements.
>
>There are bilateral L5 pars defects.

(Id.).

Later that same day, Dr. Campbell met with Plaintiff and discussed the results of the CT (DN 11-1 PageID # 462-69).  Dr. Campbell's report indicates the CT myelogram revealed a pars defect at L5 with loosening of instrumentation, a nonunion/pseudoarthrosis at L5-S1, and possible nonunion/pseudoarthrosis at L5 F4 region (Id. PageID # 467).  Additionally, the report notes that Plaintiff has malpositioned screws on the left side at L4 and at L5 (Id.).  The report indicates that Dr. Campbell discussed with Plaintiff surgical intervention (Id.).  Notably, in March of 2016, Plaintiff sought a second opinion from another specialist, Dr. William A. Schwank (Tr. 418-19)[1].  After conducting an examination and reviewing a CT scan of Plaintiff's lumbar spine, Dr. Schwank recommended that Plaintiff return to Dr. Campbell and undergo the surgery that he offered to perform (Id.).

Evidence is considered "'new only if it was not in existence or available to the claimant at the time of the administrative proceeding.'"  Ferguson, 628 F.3d at 276 (quoting Foster v. Halter, 279 F.3d 348, 357 (6th Cir. 2001); citing Hollon, 447 F.3d at 483).  Here, the medical evidence at issue did not exist at the time the ALJ conducted the hearing and issued the decision.  Therefore, the medical evidence is "new."

---

1 Plaintiff submitted the medical records from Dr. William A. Schwank to the Appeals Council in connection with Plaintiff's request for review of the ALJ's decision (Tr. 2; DN 15-3 PageID # 509-10).  Since the Appeals Council declined to review, the Court cannot consider this evidence in deciding whether to uphold, modify, or reverse the final decision of the Commissioner.  Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).  However, the Court can consider this evidence in deciding whether Plaintiff may be entitled to a pre-judgment remand under sentence six of 42 U.S.C. § 405(g).  Cline, 96 F.3d at 148; Faucher v. Sec'y of Health & Human Servs., 17 F.3d 171, 174-175 (6th Cir. 1994).

Evidence is "material" only if there is a "reasonable probability" that the Administrative Law Judge would have reached a different disposition of the disability claim if the Administrative Law Judge had the opportunity to consider the evidence at the time the decision was rendered. *See* Ferguson, 628 F.3d at 276; Sizemore, 865 F.2d at 711. In making this assessment, the undersigned has considered whether the new evidence relates to Plaintiff's condition prior to or at the time of the ALJ's decision, instead of depicting an aggravation or deterioration in Plaintiff's condition. *See* Sizemore, 865 F.2d at 712. Notably, the administrative record before the ALJ included a myelogram and post-myelogram CT scan of Plaintiff's lumbar spine performed on September 11, 2013 (Tr. 381-82) and related treatment notes of Dr. Paul R. McCombs, a spine specialist, dated September 11 and 12, 2013 (Tr. 383-86). This medical evidence indicates that on September 11, 2013, Plaintiff had bilateral pars defects at L5, moderate to severe bilateral neuroforminal stenosis at L5-S1, and problems with the instrumentation screws on the left side at L4-L5 and L5-S1 (Tr. 382-83). Thus, the February 5, 2015 CT scan and Dr. Campbell's diagnostic opinion corroborate the existence of the lumbar spine conditions originally identified in the September 11, 2013 CT scan and Dr. McCombs' diagnosis. Undoubtedly, the new evidence depicts some deterioration in Plaintiff's condition between the September 11, 2013 CT scan and the February 5, 2015 CT scan. However, the majority of that deterioration would have occurred in the two years and 74 days that separate the September 11, 2013 CT scan and the ALJ's decision on the November 24, 2014, rather than the 73 days that separate the ALJ's decision and the February 5, 2015 CT scan. Therefore, the new medical evidence relates to Plaintiff's condition on or before the ALJ's decision on November 24, 2014.

The undersigned will now assess the extent to which this new evidence may have impacted the disposition of Plaintiff's disability claim. Notably, the ALJ gave the greatest weight to the limitations expressed by Dr. Jack Reed, a non-examining State agency medical consultant[2] (Tr. 29, 118-121). Certainly, under certain circumstances the opinion of a non-examining State agency medical consultant may be entitled to greater weight than the opinions of treating or examining sources. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *3 (July 2, 1996). For example, the opinion of a State agency medical consultant may be entitled to greater weight than a treating source's medical opinion if the State agency medical "consultant's opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source." *See* Social Security Ruling 96-6p, 1996 WL 374180, at *3. However, when a non-examining source has not reviewed a significant portion of the record, and the Administrative Law Judge fails to indicate that he has "at least considered [that] fact before giving greater weight" to the reviewing doctor's opinion, the decision cannot stand. Blakely v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009).

As mentioned above, the ALJ gave the greatest weight to Dr. Reed's opinion regarding Plaintiff's limitations (Tr. 29, 118-121). However, Dr. Reed rendered his opinion without having the opportunity to consider the September 2013 CT scan of Plaintiff's lumbar spine (Tr. 381-82) and Dr. McCombs' diagnostic opinion (Tr. 383-86). Notably, that CT scan was the only radiological study of Plaintiff's lumbar spine in the record when the ALJ rendered her decision.

---

2 The ALJ accepted all but one of the limitations expressed in Dr. Jack Reed's opinion. Specifically, the ALJ did not agree with Dr. Reed's finding that Plaintiff can climb ladders/ropes/scaffolds frequently (compare Finding No. 5 with Tr. 119).

Thus, Dr. Reed rendered his opinion without the benefit of examining any type radiological evidence regarding Plaintiff's lumbar spine. This fact raises the question of whether Dr. Reed's opinion is consistent with the medical evidence in the record. If Dr. Reed's opinion is not consistent with the record then it does not constitute substantial evidence to support the ALJ's residual functional capacity assessment. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *2, 3 (July 2, 1996); Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989). Unfortunately, the ALJ failed to indicate that she had at least considered the fact that Dr. Reed did not review the September 2013 CT scan and Dr. McCombs diagnostic opinion regarding Plaintiff's lumbar spine before giving the greatest weight to Dr. Reed's opinion. Equally troubling, as a lay person, the ALJ was simply not qualified to interpret the raw medical data in the September 2013 CT scan in functioning terms when she summarily concluded that Dr. Reed's opinion was consistent with the medical evidence in the record. *See* Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functioning terms and no medical opinion supported the determination."); *see also* Clifford v. Apfel, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996) ("And, as this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."); Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001) (ALJ gave into the temptation to play doctor when he made functional findings based on his own interpretation of the treating physician's findings).[3]

---

3 While these omissions raise questions regarding whether the residual functional capacity assessment is supported by

As mentioned above, the February 5, 2015 CT scan and Dr. Campbell's diagnostic opinion corroborate the existence of the lumbar spine conditions originally identified in the September 11, 2013 CT scan and Dr. McCombs' diagnosis. Certainly, the undersigned is not qualified to interpret this raw medical data in functioning terms. However, the undersigned does not need a medical opinion to conclude that when the overlooked medical evidence from September 2013 is viewed in conjunction with this new medical evidence there is a substantial probability that the ALJ would have determined Plaintiff has the residual functional capacity to perform less than a full range of sedentary work.

Notably, at the fifth step, Grid Rule 201.14 in Appendix 2 of the regulations would direct a finding of disability if Plaintiff were capable of performing a full range of sedentary work because she is closely approaching advanced age, has at least a high school education, and her job skills are not transferable (Tr. 83). The regulations and case law indicate if application of one of the Grid Rules in Appendix 2 directs a finding of disabled, without considering the claimant's additional exertional and/or nonexertional limitations, then the Administrative Law Judge will find the claimant disabled. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e)(2); Lounsburry v. Barnhart, 468 F.3d 1111, 1115-16 (9th Cir. 2006); Cooper v. Sullivan, 880 F.2d 1152, 1156-57 (9th Cir. 1989); Harrison v. Comm'r, No. 1:13-CV-58, 2014 WL 1232685, at *5 (W.D. Mich. Mar. 25, 2014). Since there is a substantial probability that the ALJ would have determined Plaintiff has the residual functional capacity to perform less than a full range of sedentary work the

---

substantial evidence in the record and comports with applicable law, they will not be addressed herein because the focus under sentence six of 42 U.S.C. § 405(g) is whether Plaintiff is entitled to a pre-judgment remand.

regulations would direct a finding of disabled. Therefore, the undersigned finds there is a "reasonable probability" that the new evidence would have resulted in a different disposition of Plaintiff's disability claim. See Ferguson, 628 F.3d at 276; Sizemore, 865 F.2d at 711.

As previously mentioned, "good cause" is demonstrated by showing a reasonable justification for the failure to acquire and present the evidence to the Administrative Law Judge. Foster, 279 F.3d at 357. The Sixth Circuit has also indicated that "good cause" is "shown if the new evidence arises from continued medical treatment of the condition, and was not generated merely for the purpose of attempting to prove disability." Koulizos, 1986 WL 17488, at *1 (citing Wilson v. Sec'y of Health & Human Servs., 733 F.2d 1181 (6th Cir. 1984) and Willis v. Sec'y of Health & Human Servs., 727 F.2d 551 (6th Cir. 1984)). Plaintiff's unrebutted administrative hearing testimony indicated that in the fall of 2013 she wanted to treat with Dr. McCombs in Nashville, Tennessee, but lacked the medical insurance and financial resources necessary to do so (Tr. 54). Further, Plaintiff's testimony showed that through the Affordable Care Act she obtained medical insurance in 2014, but the insurance would not pay for treatment with Dr. McCombs because the policy only paid for treatment in Kentucky (Tr. 54-55). Plaintiff's testimony also showed that attempts by her primary care physician and her to locate a nearby specialist in Kentucky had been unsuccessful because those specialists who accepted her medical insurance were not willing to repair the work of another surgeon (Tr. 78-79). Additionally, Plaintiff's testimony made clear that she would continue to look for a specialist in Kentucky that would take her case (Tr. 79). Notably, less than two months after the ALJ rendered the decision, Plaintiff found Dr. Campbell, a specialist in Louisville, Kentucky, which is about a two-hour drive from where Plaintiff lives. Essentially, Dr. Campbell recommended surgical

intervention. While Plaintiff has yet to undergo the surgery, her decision to obtain a second opinion from another specialist, Dr. Schwank, indicates that Plaintiff is earnestly pursuing treatment for the condition. In sum, Plaintiff has demonstrated a reasonable justification for the failure to acquire and present the evidence to the ALJ, and that the new evidence arises from continued medical treatment of the lumbar spine condition. Therefore, Plaintiff has demonstrated "good cause" for failure to acquire and present the evidence to the ALJ.

For the foregoing reasons, the undersigned concludes that Plaintiff has demonstrated the evidence at issue is new, material, and that "good cause" exists for her failure to present the evidence to the ALJ. Therefore, a pre-judgment remand pursuant to sentence six of 42 U.S.C. § 405(g) is appropriate.

ORDER

**IT IS HEREBY ORDERED** that Plaintiff's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) (DN 11) is **GRANTED.**

**IT IS FURTHER ORDERED** that the Commissioner is directed to conduct further proceedings that consider the new medical evidence and its impact on the outcome of Plaintiff's applications for Disability Insurance Benefits and Supplemental Security Income.

Copies: Counsel